# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| MATTHEW J. CHRISTOFF, | Civil No. 17-3515 (JRT/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| THE PAUL REVERE LIFE INSURANCE COMPANY, | |
| Defendant. | |

Mark M. Nolan and Robert J. Leighton, Jr., **NOLAN, THOMPSON & LEIGHTON**, 5001 American Boulevard West, Suite 595, Bloomington, MN 55437, for plaintiff.

Christopher J. Haugen and Terrance J. Wagener, **MESSERLI & KRAMER P.A.**, 100 South Fifth Street, Suite 1400, Minneapolis, MN 55402, for defendant.

Matthew Christoff brings this disability benefits action against Paul Revere Life Insurance Company ("Paul Revere"). Christoff obtained an individual disability policy (the "Policy") through Paul Revere in 1998 and first claimed benefits under the Policy in 2001. Christoff continued to receive benefits under the Policy until 2016 when Paul Revere terminated benefits after determining that Christoff no longer qualified for benefits. Christoff then brought the instant action, arguing the termination was a breach of contract.

Presently before the Court are Paul Revere's objections to United States Magistrate Judge Tony Leung's report and recommendation ("R&R") on the parties' cross-motions for summary judgment. The Magistrate Judge found that Christoff's claims challenging

the termination of benefits under the Policy are not preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), and thus recommended that the Court deny Paul Revere's motion and grant Christoff's motion in part. On de novo review of the R&R, the the Court will conclude that the Policy is not an employee welfare benefit plan under ERISA. Thus, the Court will overrule Paul Revere's objections, adopt the R&R, deny Paul Revere's Motion for Summary Judgment, and grant Christoff's Motion for Summary Judgment in part.

## BACKGROUND

### I. FACTUAL BACKGROUND

Christoff worked for Spencer Stuart in 1998. (Aff. of Karen Connolly ("Connolly Aff.") ¶ 2, Ex. A-1 ("Admin. Record Part 1") at 833, Dec. 29, 2017, Docket No. 14.) Spencer Stuart offered long-term disability insurance to its employees under a group policy (the "Cigna Policy"). (Aff. of Janeen Frank ("Frank Aff.") ¶ 2, Jan. 18, 2018, Docket No. 26.) The plan was insured by Cigna and covered under ERISA. (*Id.*) Christoff participated in this policy. (Admin. Record Part 1 at 833.)

Spencer Stuart decided to supplement the Cigna Policy with individual disability policies. (Decl. of Dawn Mugford ("Mugford Decl.") ¶ 2, Ex. A, Feb. 1, 2018, Docket No. 29-1.) In 1998, Spencer Stuart allowed Paul Revere to offer individual policies to its employees. (Frank Aff. ¶ 3.) Purchase of the individual policies was voluntary, and not all employees purchased them. (*Id.* ¶ 5.) Christoff purchased one of these policies, which

is the Policy at issue in this action, in 1998. (Aff. of Dawn Mugford ("Mugford Aff.") ¶ 3, Dec. 29, 2017, Docket No. 12.)

Christoff indicated in his application for the Policy that his employer would pay all the premiums associated with the Policy. (Mugford Aff. ¶ 4; Admin. Record Part 1 at 833.) The Policy was issued as part of an employee security or employer sponsored plan ("ESP") referred to as Risk Group No. 083242. (Mugford Aff. ¶ 5.) ESPs were for "employers who wished to insure/provide supplemental coverage to multiple employees through individual policies." (*Id.*) Paul Revere provided a thirty-five percent premium discount to policies in Risk Group No. 083242, under which 89 individual policies were issued, at least 40 of which were issued the same year as Christoff's policy. (*Id.*)

Spencer Stuart deducted premiums on the individual policies from employees' earnings and remitted them to Paul Revere. (Frank Aff. ¶ 4.) The premiums were paid for by employees with after-tax dollars. (*Id.*) Spencer Stuart did not receive compensation for allowing Paul Revere to offer the individual policies to employees, nor did it administer claims for the individual policies. (*Id.* ¶¶ 6, 9.) Accordingly, employees completed Paul Revere forms and submitted claims to Paul Revere. (*Id.*)

Christoff became disabled in 2001 and began to draw benefits under the Policy. (Aff. of Karen Connolly ("Connolly Aff.") ¶ 2, Ex. A-1 ("Admin. Record Part [15]") at 383, Dec. 29, 2017, Docket No. 15.) Paul Revere paid disability benefits until 2016 when it terminated those benefits after a determination that Christoff was no longer disabled, and therefore no longer qualified for benefits. (*Id.*) Christoff then brought the instant action

alleging breach of contract to provide benefits. (Compl. ¶ 11, Aug. 2, 2017, Docket No. 1.)

## II. PROCEDURAL BACKGROUND

Christoff brought this breach of contract action against Paul Revere on August 2, 2017. (Compl. ¶ 11) Paul Revere moved for summary judgment, arguing that the Policy is covered by ERISA, which preempts this action. (Def.'s Mot. for Summ. J., Dec. 29, 2017, Docket No. 9; Def.'s Mem. Supp., Dec. 29, 2017, Docket No. 11.) Christoff moved for partial summary judgment on the same issue. (Pl.'s Mot. for Summ. J., Jan. 18, 2018, Docket No. 22; Pl.'s Supp. Mem., Jan. 18, 2018, Docket No. 24.)

The Magistrate Judge held a hearing on the motions. (Minute Entry, May 3, 2018, Docket No. 39.) Ultimately, he found that Christoff's claims challenging the termination of benefits under the Policy are not preempted by ERISA and recommended that the Court deny Paul Revere's motion and grant Christoff's motion in part. (R. & R., July 26, 2018, Docket No. 40.) Paul Revere objects, arguing that the R&R improperly declined to consider admissible documents, that the R&R ignored and misconstrued material evidence, and that summary judgment should have been granted in its favor. (Objs. at 1, Aug. 9, 2018, Docket No. 47.)

# DISCUSSION

## I. STANDARD OF REVIEW

### A. Report and Recommendation

Upon the filing of an R&R by a Magistrate Judge, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's report and recommendation to which the objections are made and provide a basis for those objections." *Montgomery v. Compass Airlines*, *LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015) (quoting *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008)). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).

Paul Revere objects that the Magistrate Judge declined to consider documents attached to the Mugford Affidavit and misconstrued or ignored material evidence that supported its motion. Because Paul Revere's objections are specific and proper, the Court will review de novo the objected-to portions of the R&R.

### B. Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a

dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## II. EXCLUSION OF MUGFORD EXHIBITS

Paul Revere argues that the documents attached in the exhibit to the Mugford Affidavit (the "Mugford Exhibits") should have been considered by the Magistrate Judge because they were admissible evidence. (Objs. at 2.)

Paul Revere first argues that the Mugford Affidavit satisfied all the requirements of an affidavit used to support a motion under Federal Rule of Civil Procedure 56(c)(3) because the affidavit was made on personal knowledge, set out facts that would be admissible in evidence, and showed the affiant as competent to testify on the matters stated.

(*Id.* at 3.) But the Magistrate Judge did not find otherwise; indeed, he considered the Mugford Affidavit. (R. & R. at 2 & n.2.)

Because Mugford attested that she reviewed and inspected the records attached to her affidavit and that the records were "copies of business records maintained by Paul Revere in the regular course of business," Paul Revere argues that the Mugford Exhibits are admissible under the business records exception to the rule against hearsay. Federal Rule of Evidence 802 provides that hearsay statements are inadmissible, but Rule 803 provides several exceptions. One such exception, commonly referred to as the business records exception, allows records to be admitted if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). While the Mugford Affidavit states that its attached records were maintained "in the regular course of business," it fails to establish that the records were made at or near the time of the event described, that they were made by someone with knowledge of the event, or that making the record was a regular business practice. As such,

the Mugford Affidavit fails to establish that the Mugford Exhibits are admissible under the business records exception to the rule against hearsay.[1]

The Court will overrule Paul Revere's objection to the exclusion of the Mugford Exhibits, adopt the R&R, and deny Paul Revere's Motion for Summary Judgment.

### III. CONSTRUCTION OF FACTS AND CONSIDERATION OF MATERIAL EVIDENCE

Paul Revere makes five specific objections to the Magistrate Judge's construction of the facts. Each will be discussed in turn below.

First, Paul Revere objects to the Magistrate Judge's finding that "'Paul Revere has not pointed to any evidence in the record that the 35% discount was specifically negotiated by Spencer Stuart for the benefit of its employees' and that the 'reason for the discount' is unknown." (Objs. at 5) (quoting R. & R. at 11-12.) Viewing the facts in the light most favorable to Christoff, Paul Revere fails to show that the 35% discount was specifically

---

[1] Paul Revere also argues that the Magistrate Judge erred in excluding the Mugford Exhibits on the grounds that they were not identified in the Mugford Affidavit and argues that the R&R is unclear as to the meaning of "not identified." (Def.'s Mem. Supp. at 4 & n.4.) Because the Court finds that the documents do not satisfy the business records exception and are therefore inadmissible hearsay, these arguments are moot. Nevertheless, the Court notes that at the hearing on the present motions, counsel for Paul Revere agreed that the Mugford Exhibits were not identified in the Mugford Affidavit, agreed to "remove any of the[] documents that . . . lack appropriate foundation," and could not identify the purpose or necessity of including the documents. (Tr. at 21-22, Aug. 7, 2018, Docket No. 46.) The Magistrate Judge then noted that he would disregard the Mugford Exhibits, and counsel for Paul Revere did not object, instead answering "All right." (*Id.* at 23.).

negotiated for by Spencer Stuart. Paul Revere points to several documents showing that the 35% discount was "linked to the 'ESP' assigned to Spencer Stuart." (Objs. at 8.) Evidence shows that Christoff's "policy was issued as part of an employer sponsored or security plan ("ESP") referred to as Risk Group No. 083242" that "[p]olicies issued in connection with Risk Group No. 083242 received a 35% discount on premiums," and that, "Christoff continues to receive a 35% discount because his individual policy was issued in connection with Risk group No. 083242." (*Id.* ¶¶ 5-6; *see also* Connolly Aff. ¶ 2, Ex. A-3 ("Admin. Record Part 2") at 763, Dec. 29, 2017, Docket No. 16.) While these documents may demonstrate that Christoff received the 35% discount because of his association with the ESP and Risk Group No. 083242, they do not show that Spencer Stuart specifically negotiated this discount. A dispute of fact remains as to the reason for the discount.

Second, Paul Revere objects to the Magistrate Judge's findings that "Paul Revere has not pointed to any evidence in the records to support the assertion that 'Spencer Stuart secured a 35% premium discount because it agreed to be 100% responsible for the premiums.'" (Objs. at 5) (quoting R. & R. at 11.) Viewing the facts in the light most favorable to Christoff, Paul Revere fails to show that the 35% discount was a result of the billing method agreed to by Spencer Stuart, namely that Spencer Stuart would pay 100% of premiums. While the evidence offered by Paul Revere demonstrates that Spencer Stuart paid 100% of premiums, which was then reimbursed by the employees, none of the referenced evidence connects this billing method to the discount or to negotiations of any kind. Again, a dispute of fact remains as to the reason for the discount.

Third, Paul Revere objects to the Magistrate Judge's findings that "'Christoff correctly points out that 'Paul Revere has offered no evidence that Spencer Stuart. . .touted [Christoff's policy] as part of Spencer Stuart's 'plan.' There is no contention that Spencer Stuart promoted the Policy.'" (Objs. at 6) (quoting R. & R. at 17.) Viewing the facts in the light most favorable to Christoff, Paul Revere fails to show that Spencer Stuart promoted the supplemental disability policies to its employees. Indeed, Paul Revere fails to make any factual allegations that Spencer Stuart conducted activities to promote the Paul Revere policies.

Fourth, Paul Revere objects to the Magistrate Judge's findings that "[t]here was no evidence, other than that which the Magistrate Judge declined to consider, supporting that Spencer Stuart determined which employees were eligible to apply for the Paul Revere policies." (Objs. at 6.) The facts cited by Paul Revere, however, do not support this assertion. Paul Revere asserts that because the application asks for occupation and income information that can only be verified by Spencer Stuart, Spencer Stuart necessarily set eligibility requirements related to those. This inference does not follow, especially when viewed in the light most favorable to Christoff. Further, Paul Revere asserts that because Spencer Stuart would pay for all of the premium then it "necessarily implicates the employer's involvement in confirming that the specific employee met the job and income eligibility requirements." (Objs. at 7.) Again, this inference does not follow from the cited facts. Furthermore, any associations of Risk Group or ESP to Spencer Stuart does not necessitate an inference that Spencer Stuart set eligibility criteria for obtaining the

-10-

associated plans. It merely shows that there was such an association. Lastly, the name of the policy, "Business Executive Disability Income Policy," does not show that Spencer Stuart set eligibility criteria for the policies with that name. So, considering all the evidence outside of the Mugford Exhibit, Paul Revere fails to establish that Spencer Stuart set any eligibility criteria for the plans. Furthermore, the application for insurance provided by Paul Revere states "the information obtained with this Form will be used by Paul Revere to determine my eligibility for insurance." (Admin. Record Part 1 at 833-34.) Thus, Paul Revere fails in this objection.

And fifth, Paul Revere objects to the Magistrate Judge's findings that "[t]here was 'no evidence in the record that Spencer Stuart played an active role in the application process or in processing paper work in conjunction with the Policy.'" (Objs. at 6) (quoting R. & R. at 23-24.) Viewing the facts in the light most favorable to Christoff, Paul Revere fails to show "that Spencer Stuart played an active role in the application process or in processing paper work in conjunction with the Policy." (Objs. at 5-6.) While Paul Revere alleges that Christoff's "application, and the payment of premiums related thereto, was specifically tied to an 'ESP' associated with [Spencer Stuart,]" (Def.'s Supp. Mem. at 7), Paul Revere does not allege that Spencer Stuart processed the applications or paperwork. In fact, the application Christoff completed to obtain the Policy was on Paul Revere forms and stated, "the information obtained with this Form will be used by Paul Revere to determine my eligibility for insurance." (Admin. Record Part 1 at 833-34.) Furthermore, the form appears to have been processed by Paul Revere, which assigned the Policy an ESP

number of 083240, a billing date of October 21, 1998, and a due date of November 1, 1998. At the very least, a dispute of material fact remains as to Spencer Stuart's role in the application process or processing paper work in conjunction with the Policy.

The Court will overrule Paul Revere's objections regarding the Magistrate Judge's construction of facts and consideration of material evidence, adopt the R&R, and deny Paul Revere's Motion for Summary Judgment.

## IV. THE SAFE HARBOR PROVISION

Paul Revere also objects to the Magistrate Judge's denial of its motion as to the safe harbor criteria. Paul Revere argues that the Magistrate Judge erred in concluding (1) that Spencer Stuart did not endorse the plan, and (2) that a fact question remained as to whether Spencer Stuart contributed to the plan.

### A. Endorsement

Paul Revere argues that Spencer Stuart endorsed the plan when it determined eligibility for participation in the plan. The facts cited by Paul Revere, however, do not support this assertion. Paul Revere cites to four facts that purportedly support its assertion. First, Paul Revere points to a memorandum stating that "[Spencer Stuart] want[s] to integrate Individual Disability for their consultants keeping their benefits to cover 2/3 of their income, maybe a 60/15 plan. They are very open to plan design." (Mugford Decl. ¶ 2, Ex. A.) But this memorandum does not address whether Spencer Stuart set eligibility criteria. Second, Paul Revere cites the Mugford Affidavit, which says nothing about

eligibility or how Spencer Stuart went about pursuing coverage. Third, Paul Revere cites Christoff's Policy application, which does not establish that Spencer Stuart set eligibility criteria. Although the application requests occupation and income information, the application also states that "the information obtained with this Form will be used **by Paul Revere** to determine my eligibility for insurance." (Admin. Record Part 1 at 834.) Paul Revere determines eligibility, not Spencer Stuart. Furthermore, that an insurance provider would need to reach out to an employer to verify information on an insurance application does not mean that employer set the eligibility criteria associated with the information the only the employer can verify. And lastly, Paul Revere points out that Christoff's Policy is called a "Business Executive Disability Income Policy," but this name does not demonstrate that it was Spencer Stuart, and not Paul Revere, that set eligibility criteria. (Admin. Record Part 2 at 763.)

### B. Contribution

Paul Revere objects to the Magistrate Judge's conclusion that a fact question remains as to contribution, arguing that Spencer Stuart contributed to the plan because it secured a 35% discount for Christoff. Paul Revere argues that no fact question remains because the Mugford Affidavit explains that Christoff received a 35% discount "because his individual policy was issued in connection with the Risk Group No. 083242," which is the number of Spencer Stuart's ESP. But this statement does not show that Spencer Stuart obtained the 35% discount on behalf of its employees. Indeed, Christoff's application

indicates that the 35% discount is due to "Multi life (or large case)," (Admin. Record Part 1 at 834), from which a reasonable inference could be drawn that a more generalized discount, applicable to any group with more than one individual, was applied. Furthermore, Christoff notes that the terms of the Policy indicated that the discount would continue to be applied even if Christoff was no longer employed at all, much less by Spencer Stuart. (Aff. of Mark M. Nolan ¶ 2, Ex. A at 1, Jan. 18, 2018, Docket No. 25.)

A dispute of fact remains as to contribution; thus, neither party is entitled to summary judgment on the safe harbor issue. The Court will overrule Paul Revere's objections on the issue of contribution and adopt the R&R.[2] Although Paul Revere fails to show that Spencer Stuart endorsed the plain, there remains a genuine issue of material fact as to the contribution element. Thus, Paul Revere's motion for summary judgment will be denied with respect to whether the Safe Harbor Regulation applies.

## V. APPLICATION OF ERISA

Paul Revere objects to the Magistrate Judge's conclusion that the Policy is not an employee welfare benefit plan under ERISA. Paul Revere argues that the outcome was based on the "above-referenced exclusion, misconstruction, and disregard of material,

---

[2] To the extent Christoff argues that the *Saunders v. Provident Life and Acc. Ins. Co.*, Civ. No. 16-1474 (JLK), 2018 WL 1952580 (D. Colo. 2018) case should be applied against Paul Revere, and for the Court to recognize or accept a fact established in a different case against a different party, the Court rejects this argument and will not revisit the contribution element as suggested by Christoff.

admissible evidence." (Def.'s Supp. Mem. at 9.) As a preliminary matter, the Court notes that it has overruled Paul Revere's objections as to those grounds; thus, those grounds do not support rejecting the R&R's conclusion that the Policy is not an employee welfare benefit plan under ERISA. Moreover, upon de novo review, the Court finds that the Policy is not an employee welfare plan under ERISA. A plan must be "established or maintained by an employer" for it to qualify as an employee welfare benefit plan governed by ERISA. 29 U.S.C. § 1002(1); *see Lanpher v. Unum Life Ins. Co. of Am.*, No. 14-cv-2560 (JRT/HB), 2015 WL 5157519, at *5 (D. Minn. 2015) ("The Court must also consider whether an employer conducts activities that constitute the establishment or maintenance of an employee welfare benefit plan.")."The pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits." *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 257 (8th Cir. 1994). "Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate

criteria." *Id.* Furthermore, ERISA preemption is an affirmative defense,[3] thus the burden is on Paul Revere to show that the Policy is preempted by ERISA.

Paul Revere fails to show that Spencer Stuart established or maintained a separate ongoing administrative scheme. Paul Revere first contends that its "100% responsibility for the payment of policy premiums" for 89 individual policies and its "corresponding administrative scheme" was indicative of establishing and maintaining a plan. (Objs. at 10.) Not so. That Spencer Stuart was a conduit for payments does not create an administrative scheme as contemplated by ERISA. This involves merely deducting and remitting payments and is exactly the mechanical determination exempted in *Kulinksi*. *Kulinksi*, 21 F.3d at 257-58 (no administrative scheme when, once the employee resigned, "there was nothing for the company to decide, no discretion for it to exercise, and nothing for it to do but write a check").[4] This type of activity is also specifically permitted in the Safe Harbor Provision under the third element. 29 C.F.R. 2510.3-1(j)(3). It would be untenable, then, to hold that an activity which employers can engage in and still escape ERISA enforcement under the Safe Harbor Provision, would – standing alone – subject them to liability under ERISA. Thus, this objection must fail.

---

[3] *See Estes v. Federal Express Corp.*, 417 F.3d 870, 872 (8th Cir. 2005); *Prudential Ins. Co. of America v. National Park Medical Center, Inc.*, 413 F.3d 897, 907 (8th Cir. 2005).
[4] Paul Revere also states that Spencer Stuart maintained responsibility for decision-making related to premiums and receipt of notices related to premiums. But Paul Revere provides no evidence to support this statement, citing only to its own memorandum of law. (*See* Objs. at 10.)

Paul Revere further alleges that Spencer Stuart determined eligibility for the Policy. This argument has been fully addressed above. In sum, the only evidence that might directly support such an assertion comes from the Mugford Exhibits, which the Court will not consider. Paul Revere's argument that Spencer Stuart must have set eligibility requirements because the application form for Paul Revere's disability insurance requested occupational and income information also fails. That an insurance provider would need to reach out to an employer to verify employment and income on an insurance application does not mean that employer set those conditions as an eligibility criteria. And, again, the name of an insurance policy, by itself, does not show that Spencer Stuart created any eligibility requirements.

Ultimately, Paul Revere does not demonstrate that Spencer Stuart was involved in determining employees' eligibility for and level of benefits, analyzing each employee's circumstances in light of given criteria, or any other discretionary decisions.[5]

## CONCLUSION

Upon de novo review, the Court will overrule Paul Revere's objections. The Court finds that neither party is entitled to summary judgment on the safe harbor issue because,

---

[5] Because Paul Revere does not demonstrate that Spencer Stuart was involved in determining eligibility and benefit levels, or in any other discretionary decisions, Paul Revere's objection to the R&R's conclusion that the present case is more like *Lanpher* that *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623 (8th Cir. 2001), also fails.

while Spencer Stuart did not endorse the Plan, there remains a genuine dispute of material fact as to contribution. Thus, the Court will overrule Paul Revere's objections, adopt the R&R, and deny both parties' motions as to the safe harbor issue.

Because Paul Revere fails to show that Spencer Stuart established and maintained an administrative scheme to administer the Policy's benefits under the plan, the Court finds that Christoff's claims challenging the termination of benefits under the Policy are not preempted by ERISA. As such, the Court will overrule Paul Revere's objections, adopt the R&R, deny Paul Revere's Motion for Summary Judgment, and grant Christoff's Motion for Partial Summary Judgment on the application of ERISA.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Objections to the Magistrate Judge's Report and Recommendation [Docket No. 47] are **OVERRULED**.

2. The Magistrate Judge's Report and Recommendation [Docket No. 40] is **ADOPTED**.

3. Plaintiff's Motion for Partial Summary Judgment [Docket No. 22] is **GRANTED in part** and **DENIED in part** as described herein.

4. Defendant's Motion for Summary Judgment [Docket No. 9] is **DENIED**.

DATED: September 14, 2018          \_\_\_\_s/John R. Tunheim\_\_\_\_
at Minneapolis, Minnesota.             JOHN R. TUNHEIM
                                                 Chief Judge
                                      United States District Court