# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MATTHEW J. CHRISTOFF, | Civil No. 17-CV-3515 (JRT/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION &** |
| | **ORDER GRANTING DEFENDANT'S** |
| THE PAUL REVERE LIFE INSURANCE | **MOTION FOR PARTIAL** |
| COMPANY, | **SUMMARY JUDGMENT** |
| Defendant. | |

Mark M. Nolan, **NOLAN, THOMPSON, LEIGHTON & TATARYN, PLC**, 5001 American Boulevard West, Suite 595, Bloomington, MN 55437, for plaintiff;

Terrance J. Wagener, **MESSERLI & KRAMER P.A.**, 100 South Fifth Street, Suite 1400, Minneapolis, MN 55402, for defendant.

This case arises out of Defendant Paul Revere Life Insurance Company's ("Paul Revere") alleged breach of a long-term disability insurance contract issued to Plaintiff Matthew Christoff ("Christoff"). Beginning in early 2002, Christoff began collecting disability insurance in the amount of $2,417 per month under the Paul Revere policy. On December 30, 2016, Paul Revere determined that Christoff was no longer disabled and ceased payment under the contract. Christoff filed this breach-of-contract case on August 2, 2017.

Paul Revere brings this Motion for Partial Summary Judgment on the issue of damages for claims relating to the loss of employer-provided health insurance, long-term

care insurance, and a $50,000 life-insurance policy (the "Spencer Stuart benefits"), and the lost opportunity to convert a Northwestern Mutual term-life insurance policy into a whole-life policy (the "Northwestern Mutual policy"). Paul Revere argues there is no genuine dispute of fact and it is entitled to summary judgment because the damages are (1) unrecoverable extra-contractual damages or, if not, the claimed damages are not recoverable consequential damages; and (2) Christoff cannot prove causation because the damages are too remote and speculative. Christoff argues that the damages are recoverable consequential damages and any questions regarding consequential damages are questions of fact for a jury.

Because Christoff has failed to present any evidence regarding what the parties actually contemplated or reasonably ought to have foreseen regarding the Spencer Stuart benefits or Northwestern Mutual policy damages at the time of contracting in 1998, a necessary element of consequential damages, the Court will grant Paul Revere's motion.[1]

## BACKGROUND

### I. FACTUAL BACKGROUND

In 1994, Christoff began working as a senior level executive search consultant in the Minneapolis, MN office of Spencer Stuart, a national and international executive-search firm based in Chicago, IL. (Aff. of Mark M. Nolan ("Nolan Aff."), Ex. B ("Christoff Depo.") at 13, 15, 17, June 7, 2019, Docket. No. 68.) As part of its benefits package,

---

[1] Because the Court finds the issue of consequential damages dispositive, the Court does not find it necessary to discuss the issue of causation. If it had, however, the Court would have likely found a genuine dispute of fact remains and denied the motion.

Spencer Stuart provided Christoff with health-insurance coverage, long-term care insurance coverage, and a $50,000 life-insurance policy, all of which were paid for by Spencer Stuart. (Aff. of Janeen Frank ("2019 Frank Aff.") ¶ 2, June 6, 2019, Docket No. 69.) Spencer Stuart also offered a long-term disability insurance group policy, insured by Cigna. *Christoff v. Paul Revere Life Ins. Co.*, No. 17-3515 (JRT/TNL), 2018 WL 4381000, at *1 (D. Minn. Sept. 14, 2018). Christoff participated in the Cigna group plan. *Id.*

In 1998, Spencer Stuart allowed Defendant Paul Revere to offer individual disability insurance policies to its employees to supplement the Cigna group policy. *Id.* These plans were separate and distinct from any offerings by Spencer Stuart in that (1) participation in the Paul Revere offering was completely voluntary for Spencer Stuart employees; (2) premiums on the Paul Revere policies were paid for individually by employees, using post-tax dollars; and (3) Spencer Stuart did not administer claims on the Paul Revere policies, instead Spencer Stuart employees completed Paul Revere forms and submitted claims directly to Paul Revere. *Id.* at *2. Christoff participated in the Paul Revere offering in addition to the Cigna offering. *Id.*

Prior to and independent of all this, Christoff also purchased a convertible term-life insurance policy from Northwestern Mutual in 1996. The Northwestern Mutual policy had a face value of $1,125,000. (Nolan Aff., Ex. D at 10.)

In late 2001, Christoff filed a disability claim under the Paul Revere policy and began collecting $2,417 per month under the policy shortly thereafter. (Pl.'s Ex. List, Ex. A at 2, June 7, 2019, Docket No. 70.) Christoff also began, at some point, collecting disability under a separate long-term disability insurance plan offered by Unum Group.

*See* (Pl.'s Ex. List, Ex. E at 1.) Unum Group is the parent company of Paul Revere. (Aff. of Dawn Mugford ¶ 1, Dec. 29, 2017, Docket No. 12.) Although not at issue in this litigation, the Unum policy is relevant here because so long as Christoff remained disabled under either the Unum or Paul Revere policies, Spencer Stuart continued paying premiums for Christoff's health insurance, long-term care insurance, and the $50,000 life insurance policy discussed above. (2019 Frank Aff. at ¶ 3.)

In 2009, Christoff and the Unum/Paul Revere Financial Services Unit ("FSU") began negotiations about a global settlement of Christoff's long-term disability claims under both policies. *See* (Pl.'s Ex. List, Ex. E at 1.) During these negotiations, Christoff's former counsel informed Unum/Paul Revere by letter dated October 22, 2009 that Christoff risked losing "health care and related benefits" from Spencer Stuart should Christoff accept a settlement. (Pl.'s Ex. List, Ex. F, at 1.) Christoff's former counsel noted that he was raising the issue to "indicate the financial impact on [Christoff]" if he were to accept a settlement offer. (*Id.* at 2.) The risk of loss regarding the Spencer Stuart benefits was also noted in an August 2016 claims note kept by Unum/Paul Revere. (Pl.'s Ex. List, Ex. G at 1.) The 2016 Claims note states "prior FSU review indicates that settlement should not be considered . . . due to loss of health benefits if settlement taken." (*Id.*)

A global settlement was not reached, and Paul Revere continued paying disability benefits to Christoff under the policy until December 30, 2016. (Pl.'s Ex. List, Ex. A at 1.) On that day, Paul Revere notified Christoff that it had ceased payments after it determined that Christoff was no longer disabled under the terms of the policy. (*Id.*) Allegedly as a result, Christoff lost the ability to convert his term-life Northwestern Mutual policy into a

whole-life policy and Spencer Stuart ceased paying premiums for Christoff's health insurance, long-term care insurance, and the $50,000 life-insurance policy. (*See* Christoff Depo. at 62–63; 2019 Frank Aff. at ¶¶ 5–6.)

## II. PROCEDURAL BACKGROUND

Christoff filed this breach-of-contract action on August 2, 2017. (Compl. ¶ 11, Aug. 2, 2017, Docket No. 1.) In response to an interrogatory, Christoff stated he was seeking damages for (1) long-term disability benefits from December 30, 2016 to the present; (2) reimbursement of COBRA premiums "grossed up for taxes" at a rate of $7,592 per month from October 1, 2016 to the present; (3) a comparable $50,000 life insurance plan to the one provided for by Spencer Stuart; (4) a comparable long-term care insurance policy to that provided for by Spencer Stuart; (5) damages for $1,125,000 for the loss of ability to convert part of the 1996 Northwestern Mutual term-life insurance policy into a whole life policy; and (6) interest, attorney's fees, and costs (Nolan Aff., Ex. C at 5–6.)

Presently before the Court is Paul Revere's Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56(a) on damages two through five above—the claims for damages relating to the Spencer Stuart benefits (claims 2–4) and the Northwestern Mutual policy (claim 5). (Def.'s Mot. for Summ. J., May 17, 2019, Docket No. 61.)

## DISCUSSION

## I. STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party may not rest on mere allegations or denials but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256.

Minnesota law applies in this case based on diversity jurisdiction. *Integrity Floorcovering, Inc. v. Broan–Nutone*, LLC, 521 F.3d 914, 917 (8th Cir. 2008). "In resolving any substantive issues of state law, [the Court is] bound by the decisions of the Minnesota Supreme Court." *Id.* "If the Minnesota Supreme Court has not spoken on a particular issue, [the Court] must attempt to predict how the Minnesota Supreme Court would decide an issue and may consider relevant state precedent, analogous decisions, considered dicta . . . and any other reliable data." *Id.* (omission in original) (quotation marks omitted).

## II. DAMAGES AND MINNESOTA CONTRACT LAW

Christoff must prove the following elements to sustain his breach of contract claim at trial: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Parkhill v. Minn. Mut. Life ins. Co.*, 174 F.Supp. 2d 951, 961 (D. Minn. 2000) (citing *Briggs Trans. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1970)). The parties only dispute whether certain damages are recoverable. In order to rule on this motion for partial summary judgment, then, the Court must first determine what type of damages are recoverable under Minnesota contract law.

"A damage award in a breach of contract action is intended to place the nonbreaching party 'in the position in which he would be if the contract were performed.'" *Kaplan v. Mayo Clinic*, 947 F.Supp. 2d 1001, 1007 (D. Minn. 2013) (quoting *Lesmiesiter v. Dilly*, 330 N.W.2d 95, 102 (Minn. 1983)). State law typically allows for the recovery of two kinds of damages to fulfill this principle: general and consequential damages. *See e.g.*, *DeRosier v. Util. Sys. of Am., Inc.*, 780 N.W.2d 1, 4–5 (Minn. Ct. App. 2010) (discussing the differences between general and consequential damages).

General damages are those that "naturally and necessarily result from the act complained of." *DeRosier v. Util. Sys. of Am., Inc.*, 780 N.W.2d 1, 4 (Minn. Ct. App. 2010) (quoting *Indep. Brewing Ass'n v. Burt*, 123 N.W. 932, 934 (Minn. 1909)). Here, for example, Christoff's general damages would be the amount due under the Paul Revere policy if Paul Revere breached. General damages are always recoverable and are the most common type of damage award.

In contrast, consequential damages are "the natural, but not the necessary, result of a breach," *id.* at 4–5 (citing *Smith v. Altier*, 238 N.W. 479, 479 (Minn. 1931)), and are recoverable only if they were "within the contemplation" of the parties at the time of contracting or were "so likely to result from the breach that they can reasonably be said to have been foreseen" at the time of contracting. *Franklin Mfg. Co. v. Union Pac. R.R. Co.*, 248 N.W.2d 324, 325 (Minn. 1976). Consequential damages must also be economic in nature and capable of definite calculation. *Kaplan*, 947 F.Supp. 2d at 1008–09 (citations and quotations omitted). In sum, to recover consequential damages the non-breaching party must show that (1) the damages were the natural result of the breach; (2) the damages were actually contemplated or reasonably foreseeable by the parties at the time of contracting; and (3) the damages are monetary in nature and capable of definite calculation.

The second prong—actual contemplation or reasonable foreseeability—entails both a subjective and objective determination. Actual contemplation requires the Court to take a subjective view and look to what the parties actually discussed or considered at the time of contracting. Reasonable foreseeability requires the Court to take an objective view and look to whether the damages were "so likely to result from the breach" that the parties ought to have foreseen them at the time of contracting. *Franklin Mfg. Co.*, 248 N.W.2d at 325 (noting that when reasonable foreseeability is at issue, it is "fair to hold a defendant [liable] for damages which as a reasonable [person, they] Ought [sic] to have foreseen as likely to follow from a breach" and what the parties actually "foresaw or contemplated is immaterial"). While foreseeability of damages is normally a question of fact for the jury, to survive a motion for summary judgment there must be at least *some* evidence, when

viewed in a light most favorable to the nonmovant, that would allow a reasonable jury to conclude the parties ought to have foreseen the damages at the time of contracting. *See, e.g.*, *Jensen v. Duluth Area YMCA*, 688 N.W.2d. 574, 579 (Minn. Ct. App. 2004) (granting a motion for summary judgment because the damages were not foreseeable "at the onset of the contract").

## III. DAMAGES FOR THE SPENCER STUART BENEFITS AND THE NORTHWESTERN MUTUAL POLICY

The parties' dispute centers around the second prong of the consequential damages test: whether the damages at issue were actually contemplated or reasonably foreseeable by the parties at the time of contracting. Paul Revere argues that Christoff's alleged damages for the Spencer Stuart benefits and the Northwestern Mutual policy are not recoverable consequential damages because Christoff has failed to present any evidence that would allow a reasonable jury to conclude the damages were actually contemplated or reasonably foreseeable by the parties at the time of contracting in 1998.

To survive Paul Revere's motion for summary judgment, Christoff must present evidence that, when viewed in a light most favorable to him, could allow a reasonable jury to conclude the damages at issue were either actually contemplated by the parties or "so likely to result from the breach" that the parties ought to have foreseen the damages at the time of contracting. *See Franklin Mfg. Co.*, 248 N.W.2d at 325; *Kaplan*, 947 F.Supp. 2d at 1009.

Christoff, however, fails to offer any evidence at all regarding actual contemplation or reasonable foreseeability at the time of contracting in 1998 for either the Spencer Stuart

benefits or the Northwestern Mutual policy. Instead, Christoff argues only that Paul Revere was made aware in 2009 that Christoff risked losing the Spencer Stuart benefits, roughly eleven years after the time of contracting in 1998. Further, Christoff presents no evidence whatsoever regarding actual contemplation or reasonable foreseeability for the Northwestern Mutual policy.

Despite this lack of evidence, Christoff argues that all question surrounding consequential damages are questions of fact that must go to a jury. This argument misses the mark. As the party who bears the burden of proving damages at trial, to defeat a properly supported motion for summary judgment Christoff must present at least some evidence that, when viewed in a light most favorable to him and giving him all reasonable inferences therein, would allow a reasonable jury to conclude the damages are consequential. *See, e.g. Jensen*, 688 N.W.2d. at 579. Here, Christoff presents none. And while Christoff averred during the motion hearing that he would likely be able to produce such evidence through cross-examination during trial, a nonmoving party "may not rest upon mere allegation or denials of his pleading" to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 256. He or she must instead offer "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Id.*

Because Christoff has failed to present any evidence at all regarding an essential element of his claim, the Court finds no genuine dispute of fact remains and that Paul Revere is entitled to judgment as a matter of law on Christoff's claims for consequential damages relating to the Spencer Stuart benefits and the Northwestern Mutual policy.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that The Paul Revere Life Insurance Company's Motion for Partial Summary Judgment on [Docket No. 61] is **GRANTED**.

DATED: January 3, 2020  
at Minneapolis, Minnesota.

_____  
JOHN R. TUNHEIM  
United States District Judge